**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN RE:** | **:** | **CHAPTER 11** |
| | **:** | |
| **NAHADA, INC. d/b/a** | **:** | |
| **SUPREME FISH DELIGHT,** | **:** | **CASE NO. 11-74252** |
| | **:** | |
| **Debtor.** | **:** | |
| _____ | **:** | |

---

**DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION**
**FOR NAHADA, INC. d/b/a SUPREME FISH DELIGHT**

**Dated this  23rd day of August, 2011**

---


Filed by:

NAHADA, Inc. d/b/a Supreme Fish Delight
Debtor and Debtor in Possession

Attorneys for Debtor and Debtor in Possession,
M. Denise Dotson
M. Denise Dotson, LLC
170 Mitchell Street
Atlanta, GA 30303
(404) 526-8869
(404) 526-8855 Facsimile
ddotsonlaw@me.com

**Disclaimer**

All Creditors and Holders of Interests are advised and encouraged to read this Disclosure Statement and the Plan in their entirety. Plan summaries and statements made in this Disclosure Statement are qualified in their entirety by reference to the Plan, any exhibits, and the Disclosure Statement as a whole.

This Disclosure Statement has been prepared in accordance with § 1125 of the Bankruptcy Code and Rule 3016(c) of the Federal Rules of Bankruptcy Procedure and not in accordance with federal or state securities laws. This Disclosure Statement has neither been approved nor disapproved by the Securities and Exchange Commission ("SEC"), nor has the SEC passed on the accuracy or adequacy of the statements contained herein. This Disclosure Statement was prepared to provide holders of Claims and Interests in the Debtor with "adequate information" (as defined in the Bankruptcy Code) so that they can make an informed judgment about the Plan.

As to contested matters, adversary proceedings, and other actions or threatened actions, this Disclosure Statement shall not constitute nor be construed as an admission of any fact or liability, stipulation, or waiver, but rather as a statement made in settlement negotiations.

The information contained in this Disclosure Statement is included herein for the purpose of soliciting acceptances of the Plan and may not be relied upon for any purpose other than to make a judgment with respect to, and how to vote on, the Plan.

This Disclosure Statement shall not be admissible in any nonbankruptcy proceeding involving the Debtor and any party, nor shall it be construed to be conclusive advice on the tax, securities, or other legal effects of the Plan as to Holders of Claims against, or Interests in, the Debtor; provided, however, that in the event the Debtor defaults under the Plan, the Disclosure Statement may be admissible in a proceeding relating to such default for the purpose of establishing the existence of such default.

THE REPRESENTATIONS IN THIS DISCLOSURE STATEMENT ARE THOSE OF THE DEBTOR. NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THIS PLAN WHICH ARE OTHER THAN AS CONTAINED IN THIS DOCUMENT SHOULD NOT BE RELIED UPON BY ANY PERSON. THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. EVERY EFFORT, HOWEVER, HAS BEEN MADE TO PROVIDE ADEQUATE FINANCIAL INFORMATION IN THIS DISCLOSURE STATEMENT. THE REPRESENTATIONS BY THE DEBTOR ARE NOT WARRANTED OR REPRESENTED TO BE WITHOUT ANY INACCURACY, ALTHOUGH EVERY EFFORT HAS BEEN MADE TO BE ACCURATE. NEITHER THE PLAN NOR THIS DISCLOSURE STATEMENT HAS BEEN DESIGNED TO FORECAST CONSEQUENCES WHICH FOLLOW FROM A GENERAL REJECTION OF THIS PLAN, ALTHOUGH AN

ATTEMPT IS MADE TO STATE THE CONSEQUENCES OF A LIQUIDATION OF THE DEBTOR.

## I.    Introduction and General Information

This disclosure statement ("Disclosure Statement") is submitted by NANADA, Inc. d/b/a Supreme Fish Delight (the "Debtor"), to provide information to parties in interest about the Chapter 11 Plan (the "Plan") filed by the Debtor. This introductory section is qualified in its entirety by the detailed explanations which follow and the provisions of the Plan.

This Disclosure Statement sets forth certain information regarding the Debtor's prepetition history and events that have occurred during the Debtor's Chapter 11 case. This Disclosure Statement also describes the Plan, alternatives to the Plan, effects of confirmation of the Plan, and the manner in which Distributions will be made under the Plan. In addition, this Disclosure Statement discusses the confirmation process and voting procedures that holders of Claims in Impaired Classes must follow for their votes to be counted.

*This Disclosure Statement contains summaries of certain provisions of the Plan, statutory provisions, documents related to the Plan, events in the Debtor's Chapter 11 case, and financial information. Although the Debtor believes that the Plan and related document summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents or statutory provisions. Factual information contained in this Disclosure Statement has been provided by the Debtor's management, except where otherwise specifically noted. The Debtor is unable to warrant or represent that the information contained herein, including the financial information, is without any inaccuracy or omission. The financial data set forth herein, except as otherwise specifically noted, has not been subjected to an independent audit.*

*Nothing contained herein shall (1) constitute an admission of any fact or liability by any party, (2) be admissible in any nonbankruptcy proceeding involving the Debtor or any other party; provided, however, that in the event the Debtor defaults under the Plan, the Disclosure Statement may be admissible in a proceeding relating to such default for the purpose of establishing the existence of such default, or (3) be deemed conclusive advice on the tax or other legal effects of the Debtor's Plan as to holders of Claims or Interests. You should consult your personal counsel or tax advisor on any questions or concerns regarding tax or other legal consequences of the Plan.*

*Except for historical information, all the statements, expectations, and assumptions, including expectations and assumptions contained in this Disclosure Statement, involve a number of risks and uncertainties. Although the Debtor has used its best efforts to be accurate in making these statements, it is possible that the assumptions made by the Debtor may not materialize. In addition, other important factors could affect the prospect of recovery to Creditors including, but not limited to, the inherent risks of litigation and the amount of Allowed Claims.*

Parties voting on the Plan should read both the Plan and this Disclosure Statement.

3 

A.   **Definitions**

Unless otherwise defined, capitalized terms used in this Disclosure Statement have the meanings ascribed to them in the Plan. In the event of an inconsistency between the Disclosure Statement and the Plan, the terms of the Plan shall govern and such inconsistency shall be resolved in favor of the Plan.

B.   **The Disclosure Statement**

The primary purpose of this Disclosure Statement is to provide parties entitled to vote on the Plan with adequate information so that they can make a reasonably informed decision prior to exercising their right to vote to accept or reject the Plan.

The Bankruptcy Court's approval of this Disclosure Statement constitutes neither a guarantee of the accuracy or completeness of the information contained herein, nor an endorsement of the Plan by the Bankruptcy Court.

When and if confirmed by the Bankruptcy Court, the Plan will bind the Debtor and all holders of Claims against the Debtor, whether or not they are entitled to vote or did vote on the Plan and whether or not they receive or retain any Distributions or property under the Plan. Thus, you are encouraged to read this Disclosure Statement carefully. In particular, holders of Impaired Claims who are entitled to vote on the Plan are encouraged to read this Disclosure Statement, the Plan, and any exhibits to the Plan and Disclosure Statement, carefully and in their entirety before voting to accept or reject the Plan. This Disclosure Statement contains important information about the Plan, the method and manner of distributions under the Plan, considerations pertinent to acceptance or rejection of the Plan, and developments concerning this case.

II.   **Voting on the Plan and Confirmation Process**

A.   **Voting Instructions**

Accompanying this Disclosure Statement are copies of the following documents: (1) the Plan; (2) a Notice to Voting Classes; and (3) a Ballot to be executed by Holders of Claims in Classes 3 and 4 are Impaired and are entitled to vote to accept or reject the Plan. The Ballot contains voting instructions. Please read the instructions carefully to ensure that your vote will count.

The Disclosure Statement, the form of Ballot, and the related materials delivered together herewith (collectively, the "Solicitation Package"), are being furnished to Holders of Claims in Classes 3 and 4 for the purpose of soliciting votes on the Plan.

If you did not receive a Ballot in your Solicitation Package, and believe that you should have received a Ballot, please contact, M. Denise Dotson, LLC, 170 Mitchell Street, Atlanta, GA 30303; (404) 526-8869; (Attn: M. Denise Dotson, Esq.).

IN ORDER FOR YOUR BALLOT TO COUNT IT MUST BE RECEIVED WITHIN THE TIME INDICATED ON THE BALLOT AND THE BALLOT MUST CLEARLY INDICATE YOUR CLAIM, THE CLASS OF YOUR CLAIM, AND THE AMOUNT OF YOUR CLAIM.

BY ENCLOSING A BALLOT, THE DEBTOR IS NOT ADMITTING THAT YOU ARE ENTITLED TO VOTE ON THE PLAN, IS NOT ADMITTING THAT YOUR CLAIM IS ALLOWED AS SET FORTH ON THE BALLOT, AND IS NOT WAIVING ANY RIGHTS TO OBJECT TO YOUR VOTE OR YOUR CLAIM.

### B.    Who May Vote

Only a holder of an Allowed Claim classified in an Impaired Class is entitled to vote on the Plan. As set forth in section 1124 of the Bankruptcy Code, a class is "Impaired" if legal, equitable, or contractual rights attaching to the claims or equity interests of that class are modified or altered.

Any class that is "unimpaired" is not entitled to vote to accept or reject a plan of reorganization and is conclusively presumed to have accepted the Plan.

A Claim must be "allowed" for purposes of voting in order for such creditor to have the right to vote. Generally, for voting purposes a Claim is deemed "allowed" absent an objection to the Claim if (1) a proof of claim was timely filed, or (ii) if no proof of claim was filed, the Claim is identified in the Debtor's Schedules as other than "disputed," "contingent," or "unliquidated," and an amount of the Claim is specified in the Schedules, in which case the Claim will be deemed allowed for the specified amount. In either case, when an objection to a Claim is filed, the creditor holding the Claim cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection, or allows the Claim for voting purposes. Accordingly, if you did not receive a Ballot and believe that you are entitled to vote on the Plan, you must file a motion pursuant to Bankruptcy Rule 3018 with the Bankruptcy Court for the temporary allowance of your Claim for voting purposes.

THE DEBTOR IN ALL EVENTS RESERVES THE RIGHT THROUGH THE CLAIM RECONCILIATION PROCESS TO OBJECT TO OR SEEK TO DISALLOW ANY CLAIM FOR DISTRIBUTION PURPOSES UNDER THE PLAN.

### C.    Requirements of Confirmation

The Bankruptcy Court can confirm the Plan only if all the requirements of § 1129 of the Bankruptcy Code are met. Those requirements include the following:

1.  The Plan classifies Claims and Interests in a permissible manner;

2.  The contents of the Plan comply with the technical requirements of the Bankruptcy Code;

3. The Plan has been proposed in good faith and not by any means forbidden by law;

4. The disclosures concerning the Plan are adequate and include information concerning all payments made or promised in connection with the Plan, as well as the identity, affiliations, and compensation to be paid to all officers, directors, and other insiders; and

5. The principal purpose of the Plan is not the avoidance of tax or the avoidance of the securities laws of the United States.

In addition to the confirmation requirements described above, the Plan must also be approved by all Impaired Classes of Claims entitled to vote. If, however, the Plan has not been approved by all Impaired Classes of Claims, the Court may nevertheless "cram down" the Plan over the objections of a dissenting Class. The Plan may be "crammed down" so long as it does not discriminate unfairly, is fair and equitable with respect to each dissenting Class of Claims, and at least one Impaired Class has voted in favor of the Plan without regard to any votes of insiders.

### D. <u>Acceptance or Rejection of the Plan and Cram Down</u>

The Class containing your Claim will have accepted the Plan by the favorable vote of majority in number and two-thirds in amount of Allowed Claims actually voting. In the event that any Impaired Class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan if an Impaired Class accepts it and if, as to each Impaired Class that has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." If you hold an Allowed Secured Claim, the Plan is fair and equitable if you retain your lien and receive deferred cash payments totaling the allowed amount of your Claim as of the Effective Date of the Plan, the collateral is sold and your Lien attaches to the proceeds of the sale, or you are otherwise provided with the "indubitable equivalent" of your Allowed Secured Claim. If you hold a Claim that is not an Allowed Secured Claim, and is not entitled to priority under § 507 of the Bankruptcy Code, the Plan is fair and equitable if you receive property of a value equal to the allowed amount of your Claim or if no junior Class receives or retains anything under the Plan.

### E. <u>Confirmation Hearing</u>

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan ("Confirmation Hearing") at the time indicated in the Order Approving Disclosure Statement and Notice of Confirmation Hearing. The Confirmation Hearing may be adjourned from time to time without further notice except for announcement at the Confirmation Hearing or notice to those parties present at the Confirmation Hearing.

### F. <u>Objections to Confirmation</u>

As will be set forth in the Order Approving Disclosure Statement and Notice of Confirmation Hearing, any objections to confirmation of the Plan must be in writing, set forth the objector's standing to assert any such objection, and must be filed with the Bankruptcy Court

and served on counsel for the Debtor.  The Order Approving Disclosure Statement and Notice of Confirmation Hearing contains all relevant procedures relating to the submission of objections to confirmation and should be reviewed in its entirety by any party who has an objection to confirmation.

### G.   Whom to Contact for More Information

If you have any questions about the procedure for voting your Claim or the packet of materials you received, please contact M. Denise Dotson at the address indicated below or by telephone at (404) 564-9300.  If you wish to obtain additional copies of the Plan, this Disclosure Statement, or the exhibits to those documents, at your own expense, unless otherwise specifically required by Bankruptcy Rule 3017(d), please contact M. Denise Dotson, LLC, 170 Mitchell Street, Atlanta, GA 30303, Attn:  M. Denise Dotson; or by facsimile at (404) 526-8855, Attn: M. Denise Dotson, or by electronic mail, at ddotsonlaw@me.com.

## III.   Historical Background

### A.   Description of the Debtor

Debtor is a Georgia for profit corporation.  Debtor began operating in 1985.  Debtor currently owns and operates two fast food restaurants located at:  (i) 1827 Columbia Drive, Decatur, Georgia; and  (ii) Snapfinger Plaza

### B.   Prepetition Assets and Liabilities

Debtor's assets as of the Filing Date included the following: (a) petty cash in the amount of $1,250.00;  (b) cash in checking accounts totaling approximately $2,700.00 (c) inventory valued at $1,500.00; (d) equipment valued at $6,000.00; and (e) office equipment valued at $500.00.

Debtor's liabilities as of the Filing Date totaled $305,000.00 which includes (a) secured claims totaling $0.00; (b) priority claims totaling $173,000.00; and (c) unsecured claims totaling approximately $132,000.00.

## IV.   The Chapter 11 Case

### A.   Reasons for Filing Chapter 11

Debtor filed bankruptcy to reorganize its financial affairs. The economic downturn resulted in a reduction of business.  Debtor closed two (2) locations prior to filing.  As a result of closing these locations, former landlords instituted litigation and received or would receive judgments against the Debtor.  Also, Debtor, due to decreased revenues and having to close stores, fell behind on withholding and sales tax.



B.     **Professionals**

On August 23, 2011, Debtor filed an application ("MDD Application") requesting authorization to retain the law firm of M. Denise Dotson ("MDD") to serve as bankruptcy counsel in this Case.  The MDD Application is pending before the Court.

C.     **Bar Date**

On August23, 2011, Debtor filed a motion requesting entry of an order establishing October 14, 2011 as the deadline for filing proofs of claim in this case.  An order is pending before the Court.

D.     **Utilities Motion**

On August 23, 2011, Debtor filed a motion to establish procedures for (i) utilities to request adequate assurance of payment, and (ii) resolving disputes relating to adequate assurance requests.  The motion is currently pending before the Court.

E.     **Motion to Assume Leases**

On August 23, 2011, Debtor filed a motion to assume the following leases:  (i) 1827 Columbia Drive, Decatur, Georgia; and  (ii) Snapfinger Plaza.  The motion is currently pending before the Court.

V.     **Summary of the Plan**

**The following summary of the Plan provides only a brief description of its provisions.  The summary is qualified in its entirety by the more detailed descriptions of the Plan in the Disclosure Statement and by the terms of the Plan itself.**

The Plan provides for an equitable distribution to creditors of the Debtor, preserves the value of the Debtor's business as a going concern, and preserves the jobs of employees.  The Debtor believes that any alternative to confirmation of the Plan, such as liquidation or attempts by other parties in interest to file a competing plan, would result in significant delays, litigation, job loss and/or impaired recoveries.  Moreover, the Debtor believes that the creditors will receive greater and earlier recoveries under the Plan than those that would be achieved in liquidation or under an alternative plan.   FOR THESE REASONS, THE DEBTOR URGES YOU TO RETURN YOUR BALLOT ACCEPTING THE PLAN.

The Plan contemplates the reorganization and ongoing business operations of the Debtor and the resolution of the outstanding Claims against and Interests in the Debtor pursuant to sections 1129(b) and 1123 of the Bankruptcy Code.  The Plan classifies all Claims against and Interests in the Debtor into separate Classes.



8

## VI.    Description of the Plan

### A.    Retention of Property by the Debtor

Upon confirmation, the Reorganized Debtor will retain all of the property of the estate free and clear of liens, claims, and encumbrances not expressly retained by Creditors. The Reorganized Debtor will have the rights and powers to assert any and all Causes of Action (defined as all causes of action, chooses in action, claims, rights, suits, accounts or remedies belonging to or enforceable by the Debtor, including Avoidance Actions, whether or not matured or unmatured, liquidated or unliquidated, contingent or noncontingent, known or unknown, or whether in law or in equity, and whether or not specifically identified in the Debtor's Schedules, but excluding receivables earned by the Debtor or revenues to which the Debtor is entitled as a result of the ordinary and normal operation of the Debtor's business).

### B.    Parties Responsible for Implementation of the Plan

Upon confirmation, the Reorganized Debtor will be charged with administration of the Case. The Reorganized Debtor will be authorized and empowered take such actions as are required to effectuate the Plan, including the prosecution and enforcement of Causes of Action. The Reorganized Debtor will file all post-confirmation reports required by the United States Trustee's office. The Reorganized Debtor will also file the necessary final reports and will apply for a final decree as soon as practicable after substantial consummation, the completion of the claims analysis and objection process, and following entry of Final Orders in all Bankruptcy Court litigation.

### C.    Liabilities of the Reorganized Debtor

The Reorganized Debtor will not have any liabilities except those expressly assumed under the Plan. The Reorganized Debtor will be responsible for all Operational Expenses (defined as the normal and ordinary costs and expenses of operating the Debtor's business, including, without limitation, payroll and related taxes, insurance premiums, bank charges, maintenance costs, inventory costs, and all other costs of operations of any type arising after the Petition Date in connection with the operation of the Debtor's business, unless specifically excluded under the Plan) incurred by the Debtor in the ordinary course of business after the Filing Date, and those Operational Expenses will be paid in the ordinary course of business as they become due or as agreed upon by the of the Operational Expense claim.

### D.    Funding of the Plan

The Debtor shall pay all claims from the Debtor's post petition income and family contributions.



9

**E.**    **Provisions Regarding Executory Contracts**

Debtor is party to the following unexpired leases:  (i) 1827 Columbia Drive, Decatur, Georgia; and  (ii) Snapfinger Plaza.  The motion is currently pending before the Court.

Nothing herein constitutes nor should it be construed as an admission or waiver of Debtor's rights to seek to challenge the agreements and request a legal determination that such agreements constitute financing agreements. Debtor asserts that all obligations due and owing under the executory contracts and unexpired leases to be assumed hereunder are current.  Any party that asserts a cure claim shall file a request for determination of cure claim on or before sixty (60) days after mailing of notice of the Confirmation Order.    Any requests for determination of cure claim not filed on or before sixty (60) days after mailing of notice of the Confirmation Order will be waived and forever barred and the amounts determined to be due and owing by the Debtor shall become binding upon the parties and their successors, assigns, or heirs.  Any allowed cure amounts will be paid in six (6) equal monthly installments beginning the first month after the Effective Date of the Plan.

Any unexpired leases or executory contracts which are not assumed or are the subject of a pending motion to assume shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date.  A proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before sixty (60) days after mailing of notice of the Confirmation Order.  Any claims which are not timely filed will be disallowed and discharged.

**F.**    **Avoidance Actions and Retained Rights**

The Plan provides that the Debtor shall retain all rights of action against others.  The Plan also provides that the Debtor shall retain "Avoidance Actions" under chapter 5 of the Bankruptcy Code.

The Debtor may also have Claims against others which are retained.  Notwithstanding the foregoing, the Debtor is reviewing records and believes there are potential preference claims.  Further, the Debtor is not aware of any fraudulent conveyance claims.

**G.**    **Treatment of Claims and Interests**

A brief summary of the Classes, the treatment of each Class, and the voting rights of each Class is set forth below.  A complete description of the treatment of each Class is set forth in Article 4 of the Plan.

4.1    <u>Class 1: Internal Revenue Service Priority Tax Claim.</u>  Class 1 consists of the Priority Claim of Internal Revenue Service.  Each Holder of an Allowed Tax Claim due and payable on or prior to the Effective Date will receive sixty (60) deferred equal monthly Cash payments over a five (5) year period plus simple interest on any outstanding balance from the



10

Filing Date calculated at a fixed rate of 7% per annum from the Effective Date or such lesser rate agreed to by a particular taxing authority. The amount of any Tax Claim that is not an Allowed Claim or that is not otherwise due and payable on or prior to the Effective Date, and the right of the Holder of such Claim, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code.

A failure by the Reorganized Debtor to make a payment to each Holder of an Allowed Tax Claim pursuant to the terms of the Plan shall be an event of default. If the Reorganized Debtor fails to cure an event of default as to tax payments within ten (10) days notice of default by the Holder of an Allowed Tax Claim to the Debtor and Debtor's counsel, then the Holder of an Allowed Tax Claim may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies it may have under applicable state law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

Debtor estimates that the Internal Revenue Priority Tax Claim is approximately $100,000.00. Debtor estimates monthly plan payments will be approximately $1,842.00.

4.2    Class 2:    Priority Claim of the Georgia Department of Revenue. Class 2 consists of the Secured Claim of Georgia Department of Revenue. The Holder of an the Allowed Class 2 Claim will receive sixty (60) deferred equal monthly Cash payments over a five (5) year period plus simple interest on any outstanding balance from the Effective Date calculated at a fixed rate of 7% per annum from the Effective Date or such lesser rate agreed to by a particular taxing authority. The amount of any Tax Claim that is not an Allowed Claim or that is not otherwise due and payable on or prior to the Effective Date, and the right of the Holder of such Claim, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code.

A failure by the Reorganized Debtor to make a payment to each Holder of an Allowed Tax Claim pursuant to the terms of the Plan shall be an event of default. If the Reorganized Debtor fails to cure an event of default as to tax payments within ten (10) days notice of default by the Holder of an Allowed Tax Claim to the Debtor and Debtor's counsel, then the Holder of an Allowed Tax Claim may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies it may have under applicable state law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

Debtor estimates that the Allowed Secured Claim of the Georgia Department of Revenue will be no more than $73,000.00 which will result in monthly plan payments of approximately $1,446.48.

4.3    <u>Class 3</u>.    Class 3 consists of Unsecured Claims Less than $2,500.00 ("Convenience Claims"). Holders of Allowed Convenience Claims shall be paid in full on the Effective Date. Georgia Power is scheduled as a creditor holding a general unsecured claim in the amount of $2,000.00 and would be the only creditor in this class.

Holders of Allowed Convenience Claims are Impaired and are entitled to vote to accept or reject the Plan.

4.4    <u>Class 4.</u>    Class 4 consists of Unsecured Claims In Excess of $2,500.00 ("Unsecured Claims"). Holders of Allowed Unsecured Claims shall receive sixty (60) equal monthly installments equivalent to five (5%) percent of the amount of the Allowed Unsecured Claim.

Potential Unsecured Claims include DDR Rental with a claim in the amount of $70,000.00 and US Foods with a claim in the amount of $60,000.00. DDR Rental would receive a total distribution of $3,500.00 and US Foods would receive a total distribution of $3,000.00 paid over 60 months.

Holders of Allowed Class 4 Claims are Impaired and are entitled to vote. Total monthly plan payments shall total approximately $108.33. Finan144cial projections are attached hereto and incorporated herein by reference as Exhibit "A."

4.5    <u>Class 5</u>    Class 5 consists of Insider Claims. Holders of Insider Claims shall not receive any distributions under the Plan.

4.6    <u>Class 6</u>    Class 6 consists of Interest Claims. Holders of Interest Claims shall retain their interest in the Reorganize Debtor. Interest Holder shall issue a $5,000.00 non-interest hearing note with payments due annually to the Debtor.

## Article 5

**VII.    Administrative Expenses**

Treatment of administrative expense claim is set forth in Article 5 of the Plan and summarized below.

5.1    <u>Summary</u>.    Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against the Debtor are not classified for purposes of voting on, or receiving Distributions under this Plan. Holders of such Claims are not entitled to vote on this Plan. All such Claims are instead treated separately in accordance with this Article V and in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

5.2    Administrative Expense Claims.

5.2.1    Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (1) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such and the Debtor or the Reorganized Debtor, or (iv) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by the Debtor in the ordinary course of business, or otherwise assumed by the Debtor on the Effective Date pursuant to this Plan, including any tax obligations arising after the Filing Date, will be paid or performed by the Reorganized Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

5.2.2    Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim, other than an Administrative Expense Claim arising from the operation by the Debtor of its business in the ordinary course of business, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the Reorganized Debtor provides notice by mail or by publication, in a form and manner approved by the Court, of the occurrence of the Effective Date. At the same time any Person that files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for the Reorganized Debtor. Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by the Debtor, the Estate, or the Reorganized Debtor.

5.2.3    Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within sixty (60) days after the Effective Date or by such other deadline as may be fixed by the Bankruptcy Court.

The Debtor's attorney fees during the remaining pendency of the case shall be paid as the same may be approved by the Bankruptcy Court. The Plan provides that the Debtor may pay professional fees incurred after confirmation of the Plan without Court approval. The Debtor shall pay all pre-confirmation fees of professionals as payment of the same is approved by the Court.

## VIII.  Tax Consequences

Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods



of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only. No specific tax consequences to any Creditor or of an Interest are represented, implied, or warranted. Each Holder of a Claim or Interest should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation.

THE PROPONENT ASSUMES NO RESPONSIBILITY FOR THE TAX EFFECT THAT CONSUMMATION OF THE PLAN WILL HAVE ON ANY GIVEN OF A CLAIM OR INTEREST. HOLDERS OF CLAIMS OR INTERESTS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN TO THEIR INDIVIDUAL SITUATION.

The receipt by a Creditor or Interest of cash or property in full or partial payment of its Claim or Interest may be a taxable event. To the extent that a portion of the cash or the fair market value of any property received is attributable to accrued and unpaid interest on a Claim being paid, a Creditor may recognize interest income. A Creditor or Interest may also recognize gain or loss equal to the difference between the sum of the amount of cash received and the adjusted basis in the Claim or Interest for which the receives amounts under the Plan. Such gain or loss may be treated as ordinary or capital depending upon whether the Claim or Interest is a capital asset.

Under the backup withholding rules of the Tax Code, a of a Claim may be subject to backup withholding at the rate of thirty-one percent (31%) with respect to Distributions made pursuant to the Plan unless such (i) is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact, or (ii) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that it is not subject to backup withholding due to a failure to report all dividends and interest. Any amount so withheld will be credited against the 's federal income tax liability.

## IX.   Debtor's Operations After the Filing Date

Debtor has and will continue operations after the Filing Date and will conduct his affairs as a debtor in possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code since the Petition Date.

## X.   Liquidation Analysis

The Debtor's Plan provides the Debtor the right to pay unsecured creditors from post-petition income In the event the Debtor's estate is liquidated, the unsecured creditors would receive an amount less than that proposed in the Plan. Conversion and liquidation under Chapter 7 of the Bankruptcy Code would result in the appointment of a Chapter 7 trustee and the

liquidation of non-exempt assets  Assets disposed of by "liquidation" or "fire" sale generally generate less proceeds than assets that are marketed and sold as a going concern.

Debtor's assets consist of cash totaling $3,950.00, office equipment totaling $500.00, restaurant equipment totaling $6,000.00 and inventory totaling $1,500.00 for total assets of $11,950.00.  Priority claims total $173,000.00,  Upon liquidation of assets all funds generated would be used to partially satisfy the claims of the Internal Revenue Service and Georgia Department of Revenue,  No proceeds would be available to disburse to unsecured creditors.

## XI.    Procedures for Treating and Resolving Disputed Claims

### A.    Objection To Claims

The Plan provides that the Reorganized Debtor shall be entitled to object to Claims, provided, however, that the Debtor and Reorganized Debtor shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date or (ii) that are Allowed by the express terms of the Plan.  Any objections to Claims must be filed by the Claims Objection Deadline.  The Plan defines the Claims Objection Deadline to be the later of the first Business Day which is (i) ten (10) days after the Effective Date, or (ii) such other time as may be ordered by the Bankruptcy Court, as such dates may be from time to time extended by the Bankruptcy Court without further notice to parties in interest.

### B.    No Distributions Pending Allowance

Except as otherwise provided in the Plan, no Distributions will be made with respect to any portion of a Claim unless and until (i) the Claims Objection Deadline has passed and no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

### C.    Estimation of Claims

The Debtor or the Reorganized Debtor, as the case may be, may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to the Bankruptcy Code regardless of whether the Debtor or the Reorganized Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor (and after the Effective Date, the Reorganized Debtor) may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.



15

### D.    Resolution of Claims Objections

On and after the Effective Date, the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

## XII.    Conditions Precedent to the Effective Date

### A.    Conditions to Confirmation

The following are conditions precedent to confirmation of the Plan that may be satisfied or waived in accordance with Article 11.3 of the Plan: (a) the Bankruptcy Court shall have approved a Disclosure Statement with respect to the Plan; and (b) the Confirmation Order shall have been signed by the Bankruptcy Court and entered on the docket of the Bankruptcy Court.

### B.    Conditions to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 11.2 of the Plan.

(a)    The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not be stayed.

(b)    All documents and agreements to be executed on the Effective Date or otherwise necessary to implement the Plan shall be in form and substance that is acceptable to the Debtor, in its reasonable discretion.

(c)    The Debtor shall have received any authorization, consent, regulatory approval.

Under the Plan, each of the conditions set forth above may be waived, in whole or in part, by the Debtor without any notice to any other parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtor in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor in its sole discretion). The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## XIII.    Certain Effects of Confirmation

### A.    Vesting of the Debtor's Assets

Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in the Debtor that owned



such property or interest in property as of the Filing Date, free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security s, except as specifically provided in the Plan.  As of the Effective Date, the Reorganized Debtor may operate its businesses and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

### B.    Discharge of the Debtor

Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtor, the Reorganized Debtor or its Estate that arose prior to the Effective Date.

### C.    Release by Debtor of Certain Parties

Except as otherwise specifically provided in the Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, as of the Effective Date, each Debtor, in its individual capacity and as a debtor in possession for and on behalf of its Estate, shall release and discharge and be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged all Released Parties for and from any and all claims or Causes of Action existing as of the Effective Date in any manner arising from, based on or relating to, in whole or in part, the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims prior to or in the bankruptcy case, or any act, omission, occurrence, or event in any manner related to any such Claims or, restructuring or the bankruptcy cases.  The Reorganized Debtor, and other potential representatives of the Estate shall be bound, to the same extent the Debtor is bound, by all of the releases set forth above.

The Released Parties include (i) all officers, directors, employees, consultants, agents, financial advisors, attorneys and other representatives of the Debtor who served in such capacity on or subsequent to the Filing Date, in each case in their capacity as such.

### D.    Release by Holders of Claims

The Plan contains the following language regarding releases of claims by Holders of Claims:

**EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, ON THE EFFECTIVE DATE, (a) EACH PERSON THAT VOTES TO ACCEPT THE PLAN OR IS PRESUMED TO HAVE VOTED FOR THE PLAN PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE; AND (b) TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AS SUCH LAW MAY BE EXTENDED OR**



17

INTERPRETED SUBSEQUENT TO THE EFFECTIVE DATE, EACH ENTITY (OTHER THAN A DEBTOR), THAT HAS HELD, HOLDS, OR MAY HOLD A CLAIM OR INTEREST (EACH, A "RELEASE OBLIGOR"), IN CONSIDERATION FOR THE OBLIGATIONS OF THE DEBTOR AND THE REORGANIZED DEBTOR UNDER THE PLAN AND THE CASH, NEW COMMON STOCK, AND OTHER CONTRACTS, INSTRUMENTS, RELEASES, AGREEMENTS OR DOCUMENTS TO BE DELIVERED IN CONNECTION WITH THE PLAN, SHALL HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITINALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED EACH RELEASED PARTY FROM ANY CLAIM OR CAUSE OF ACTION EXISTING AS OF THE EFECTIVE DATE ARISING FROM, BASED ON OR RELATING TO, IN WHOLE OR IN PART, THE SUBJECT MATTER OF, OR THE TRANSACTION OR EVENT GIVING RISE TO, THE CLAIM OF SUCH RELEASE OBLIGOR, AND ANY ACT, OMISSION, OCCURRENCE OR EVENT IN ANY MANNER RELATED TO SUCH SUBJECT MATTER, TRANSACTION OR OBLIGATION; PROVIDED, HOWEVER, THAT THIS ARTICLE 10.4 SHALL NOT RELEASE ANY RELEASED PARTY FROM ANY CAUSE OF ACTION HELD BY A GOVERNMENTAL ENTITY EXISTING AS OF THE EFFECTIVE DATE, BASED ON (i) THE INTERNAL REVENUE CODE OR OTHER DOMESTIC STATE, CITY OR MUNICIPAL TAX CODE, (ii) THE ENVIRONMENTAL LAWS OF THE UNITED STATES OR ANY DOMESTIC STATE, CITY OR MUNICIPALITY, (iii) ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY DOMESTIC STATE, CITY OR MUNICIPALITY, (iv) THE EXCHANGE ACT, THE SECURITIES ACT, OR OTHER SECURITIES LAWS OF THE UNITED STATES OR ANY DOMESTIC STATE, CITY, OR MUNICIPALITY, OR (v) SECTIONS 1104-1109 AND 1342(d) OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED.

## E.    Setoffs

The Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have against such , but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claim that the Debtor or the Reorganized Debtor may have against such .

## F.    Exculpation and Limitation of Liability

Under the Plan, the Debtor, the Reorganized Debtor and any of such parties' respective current and/or post-Filing Date and pre-Effective Date members, officers, directors, employees advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and shall be released from, any claim, obligation, cause of action, or liability to one another or to any  of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisor, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Cases, the negotiation and filing of the Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of the Plan,

18

the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. No of any Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this provision for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan.

### G.      Injunction

The satisfaction, release, and discharge pursuant to Article X of the Plan shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action satisfied, released, or discharged under the Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

### H.      Miscellaneous Plan Provisions

#### 1.      Modification of Plan

The Debtor shall be allowed to modify the Plan pursuant to section 1127 of the Bankruptcy Code to the extent applicable law permits. Subject to the limitations contained in the Plan, pursuant to Article 13.1 of the Plan, the Debtor may modify the Plan, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the Modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto. In the event of any modification on or before confirmation, any votes to accept or reject the Plan shall be deemed to be votes to accept or reject the Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes. The Debtor reserves the right in accordance with section 1127 of the Bankruptcy Code to modify the Plan at any time before the Confirmation Date.

#### 2.      Retention of Jurisdiction

The Plan provides that subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

> (a)      to adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established in the Plan;

19

(b)  To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated claim, to establish the amount of any reserve required to be withheld from any distribution under the Plan on account of any disputed, contingent or unliquidated claim;

(c)  To resolve all matters related to the rejection, assumption and/or assignment of any Executory Contract or Unexpired Lease of the Debtor;

(d)  To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by the Debtor and/or the Reorganized Debtor;

(e)  To hear and rule upon all applications for Professional Compensation;

(f)  To remedy any defect or omission or reconcile any inconsistency in the Plan, as may be necessary to carry out the intent and purpose of the Plan;

(g)  To construe or interpret any provisions in the Plan and to issue such orders as may be necessary for the implementation, execution and consummation of the Plan, to the extent authorized by the Bankruptcy Code;

(h)  To adjudicate controversies arising out of the administration of the Estate or the implementation of the Plan;

(i)  To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of the Plan, including the Distribution of funds from the Estate and the payment of claims;

(j)  To determine any suit or proceeding brought by the Debtor and/or the Reorganized Debtor to recover property under any provisions of the Bankruptcy Code;

(k)  To hear and determine any tax disputes concerning the Debtor and to determine and declare any tax effects under the Plan;

(l)  To determine such other matters as may be provided for in the Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

(m)  To determine any controversies, actions or disputes that may arise under the provisions of the Plan, or the rights, duties or obligations of any Person under the provisions of the Plan;

(n)  To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with,



20

any agreement pursuant to which the Debtor sold any of its assets during the Bankruptcy Cases; and

(o)    To enter a final decree.

## XIV.  Confirmation and Consummation Procedure

### A.    General Information

All creditors whose Claims are Impaired by the Plan may cast their votes for or against the Plan. As a condition to confirmation of the Plan, the Bankruptcy Code requires that one Class of Impaired Claims votes to accept the Plan. Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a Class of Impaired Claims as acceptance by s of at least two-thirds of the dollar amount of the class and by more than one-half in number of Claims. s of Claims who fail to vote are not counted as either accepting or rejecting a plan. Voting is accomplished by completing, dating, signing and returning the ballot form (the "Ballot") by the Voting Deadline. Ballots will be distributed to all creditors entitled to vote on the Plan and is part of the Solicitation Package accompanying the Disclosure Statement. The Ballot indicates (i) where the Ballot is to be filed and (ii) the deadline by which creditors must return their Ballots.

### B.    Solicitation of Acceptances

This Disclosure Statement has been approved by the Court as containing "adequate information" to permit creditors and equity interest s to make an informed decision whether to accept or reject the Plan. Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to, or concurrently with, such solicitation.

### C.    Acceptances Necessary to Confirm the Plan

At the Confirmation Hearing, the Court shall determine, among other things, whether the Plan has been accepted by the Debtor's creditors. Classes 3, 5 and 6, will be deemed to accept the Plan if at least two-third in amount and more than one-half in number of the Claims in each class vote to accept the Plan. Furthermore, unless there is unanimous acceptance of the Plan by Classes 3 and 4 the Court must also determine that any non-accepting Class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such Class member would receive or retain if the Debtor were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

### D.    Confirmation of Plan Pursuant to Section 1129(b)

The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all Impaired classes. To confirm the Plan without the requisite number of acceptances of each Impaired Class, the Court must find that at least one Impaired Class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to any Impaired Class that does not accept the Plan. Class 5



is deemed to reject the Plan.  Accordingly, if any Impaired Class votes to accept the Plan, the Debtor will seek to confirm the Plan under the "cramdown" provisions of section 1129(b) of the Bankruptcy Code.

### E.     Considerations Relevant to Acceptance of the Plan

The Debtor's recommendation that all Creditors should vote to accept the Plan is premised upon the Debtor's view that the Plan is preferable to other alternatives for liquidation of the Debtor's estate.  It appears unlikely to the Debtor that an alternate plan of reorganization or liquidation can be proposed that would provide for payments in an amount equal or greater than the amounts proposed under the Plan.  If the Plan is not accepted, it is likely that the interests of all creditors will be further diminished.

Respectfully submitted, this 23rd day of August, 2011.

/s/ NAHADA, Inc. d/b/a

Supreme Fish Delight

By: Lawrence Shamsid-Deen

Authorized Representative

Debtor and Debtor in Possession

**M. Denise Dotson, LLC**

*s/ M. Denise Dotson*

M. Denise Dotson

170 Mitchell Street

Atlanta, GA  30303

(404) 526-8869

(404) 526-8855 fax

ddotsonlaw@me.com



EXHIBIT "A" FOLLOWS

Projected Net Profit Monthly Basis

| | | |
|---|---|---|
| Net Profit | | $5,000.00 |
| (based upon stores) | | |
| | | |
| Plan Payments | | |
| Class 1 | $1,842.00 | |
| Class 2 | $1,446.48 | |
| Class 4 | $108.33 | |
| | | |
| Total Plan Payments | | $3,396.81 |
| | | |
| Net Cash Remaining | | $1,603.19 |

Supreme Fish Delight/Columbia
Cash Flow Analysis 2011

| | | July | | August | | September | | October |
|---|---|---|---|---|---|---|---|---|
| **Sales After Taxes** | $ | 35,000.00 | $ | 35,000.00 | $ | 35,000.00 | $ | 35,000.00 |
| | | | | | | | | |
| **Expenses** | | | | | | | | |
| Labor | $ | 10,000.00 | $ | 10,000.00 | $ | 10,000.00 | $ | 10,000.00 |
| Food Cost | $ | 13,400.00 | $ | 13,400.00 | $ | 13,400.00 | $ | 13,400.00 |
| Lights | $ | 1,700.00 | $ | 1,700.00 | $ | 1,700.00 | $ | 1,700.00 |
| Gas | $ | 600.00 | $ | 600.00 | $ | 600.00 | $ | 600.00 |
| Telephone | $ | 400.00 | $ | 400.00 | $ | 400.00 | $ | 400.00 |
| Insurance | $ | 500.00 | $ | 500.00 | $ | 500.00 | $ | 500.00 |
| Credit Card | $ | 350.00 | $ | 350.00 | $ | 350.00 | $ | 350.00 |
| Accountant | $ | 250.00 | $ | 250.00 | $ | 250.00 | $ | 250.00 |
| Repairs | $ | 400.00 | $ | 400.00 | $ | 400.00 | $ | 400.00 |
| Alarm | $ | 25.00 | $ | 25.00 | $ | 25.00 | $ | 25.00 |
| Cable | $ | 75.00 | $ | 75.00 | $ | 75.00 | $ | 75.00 |
| Permits/Taxes | $ | 800.00 | $ | 800.00 | $ | 800.00 | $ | 800.00 |
| Rent | $ | 3,500.00 | $ | 3,500.00 | $ | 3,500.00 | $ | 3,500.00 |
| Misc. | $ | 300.00 | $ | 300.00 | $ | 300.00 | $ | 300.00 |
| Adv/Contributions | $ | 200.00 | $ | 200.00 | $ | 200.00 | $ | 200.00 |
| Total Expenses | $ | 32,500.00 | $ | 32,500.00 | $ | 32,500.00 | $ | 32,500.00 |
| | | | | | | | | |
| **Profit** | $ | 2,500.00 | $ | 2,500.00 | $ | 2,500.00 | $ | 2,500.00 |

Per Store
Total Projected wouldbe double

Supreme Fish Delight/Columbia
Cash Flow Analysis 2011

| | November | December |
|---|---|---|
| **Sales After Tax** | $ 35,000.00 | $ 35,000.00 |
| | | |
| **Expenses** | | |
| Labor | $ 10,000.00 | $ 10,000.00 |
| Food Cost | $ 13,400.00 | $ 13,400.00 |
| Lights | $ 1,700.00 | $ 1,600.00 |
| Gas | $ 650.00 | $ 750.00 |
| Telephone | $ 400.00 | $ 400.00 |
| Insurance | $ 500.00 | $ 500.00 |
| Credit Card | $ 350.00 | $ 350.00 |
| Accountant | $ 250.00 | $ 250.00 |
| Repairs | $ 400.00 | $ 400.00 |
| Alarm | $ 25.00 | $ 25.00 |
| Cable | $ 75.00 | $ 75.00 |
| Permits/Taxes | $ 800.00 | $ 800.00 |
| Rent | $ 3,500.00 | $ 3,500.00 |
| Misc. | $ 300.00 | $ 300.00 |
| Adv/Contribution | $ 200.00 | $ 200.00 |
| Total Expenses | $ 32,550.00 | $ 32,550.00 |
| | | |
| **Profit** | $ 2,450.00 | $ 2,450.00 |

CERTIFICATE OF SERVICE

I certify that on the date specified herein below I cause to be served a copy of the foregoing documents via first class United States mail in a properly addressed envelope with sufficient postage affixed thereto to ensure delivery upon the parties listed below:

Office of the United States Trustee
362 Richard B. Russell Federal Building
75 Spring Street
Atlanta, Georgia 30303

This 23rd day of August, 2011.

                                        **M. Denise Dotson, LLC**
                                         *s/ M. Denise Dotson*
                                        M. Denise Dotson
                                        170 Mitchell Street
                                        Atlanta, GA  30303
                                        (404) 526-8869
                                        (404) 526-8855 fax
                                        ddotsonlaw@me.com

                                        Attorneys for Debtor and Debtor in
                                        Possession